'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANTHONY BOUYER, an
individual,

        Plaintiff,

   v.

ROCKY'S RACQUET WORLD, a
Limited Partnership; and
DOES 1-10, inclusive,

       Defendants.

CV 20-4710-RSWL-RAOx

**ORDER re: Defendant's
Motion to Dismiss
Plaintiff's Complaint and
Declare Plaintiff a
Vexatious Litigant** [19]

    Plaintiff Anthony Bouyer ("Plaintiff") claims that
Defendant Rocky's Racquet World ("Defendant") violated
the Americans with Disabilities Act ("ADA") and
California's Unruh Civil Rights Act ("Unruh Act").
Before the Court is Defendant's Motion to Dismiss
Plaintiff's Complaint and Declare Plaintiff a Vexatious
Litigant (the "Motion") [19].

    Having reviewed all papers submitted pertaining to
the Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**

1

the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

### I.   BACKGROUND

**A.   Factual Background**

Plaintiff, a California resident, is a paraplegic who requires a wheelchair for mobility.  Compl. ¶ 1, ECF No. 1.  Defendant owns real property located at 8001 Laurel Canyon Blvd., North Hollywood, California 91605 (the "Property").  Id. ¶ 2.

On or about May 18, 2020, Plaintiff went to a Boost Mobile store (the "Business") located on the Property to inquire about phones and confirm that the Business was accessible to persons with disabilities.  Id. ¶ 8. Plaintiff alleges that, although the Property reserved parking spaces for patrons, the Property had no designated parking spaces for persons with disabilities that complied with the 2010 Americans with Disabilities Act Accessibility Guidelines ("ADAAG" or "ADA Standards").  Id. ¶ 11.  Plaintiff personally encountered the following architectural barriers: a built-up curb ramp projects from the sidewalk into the access aisle; the curb ramp exceeds the maximum grade allowed by ADAAG specifications; and an access aisle is not properly marked.  Id. ¶¶ 12, 16.

Plaintiff claims that the architectural barriers deny him his right to enjoy accessible conditions at a place of public accommodation.  Id. ¶ 16.  Plaintiff alleges that he is deterred from patronizing the

Business and its accommodations but intends to return to the Business for the dual purpose of availing himself of its goods and services and ensuring that it complies with federal and state law.  Id. ¶ 19.  Plaintiff plans to return as a "tester" within forty-five days of being informed that the Property has become fully and equally accessible.  Id. ¶ 20.

According to Plaintiff, the violations can be easily removed without much difficulty or expense, and if complete removal were not achievable, numerous alternative accommodations could be made to provide a greater level of access.  Id. ¶ 23.

**B.  Procedural Background**

On May 27, 2020, Plaintiff filed his Complaint [1], asserting two claims for relief: (1) violations of the ADA, 42 U.S.C. § 12181 et seq.; and (2) violation of the Unruh Act, Cal. Civ. Code § 51 et seq.  On October 20, 2020, Defendant filed the instant Motion [19].  Plaintiff filed his Opposition [22] on November 3, 2020, and Defendant replied [23] on November 10, 2020.

## II.  DISCUSSION

**A.  Legal Standard**

1.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party to seek dismissal of an action for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A jurisdictional challenge under Rule 12(b)(1) may be facial or factual.  Safe Air for

Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).
A facial attack asserts that the allegations in a
complaint "are insufficient on their face to invoke
federal jurisdiction," whereas a factual attack
"disputes the truth of the allegations that, by
themselves, would otherwise invoke federal
jurisdiction."  Id.

To resolve a facial attack, the court accepts the
allegations in the complaint as true and construes them
in favor of the party opposing dismissal.  Leite v.
Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).
Conversely, in resolving a factual attack, the court
"need not presume the truthfulness of the plaintiff's
allegations" and "may review evidence beyond the
complaint without converting the motion to dismiss into
a motion for summary judgment."  Safe Air for Everyone,
373 F.3d at 1039 (citations omitted).  If the moving
party brings a factual attack by presenting extrinsic
evidence, "the party opposing the motion must furnish
affidavits or other evidence necessary to satisfy its
burden of establishing subject matter jurisdiction."
Id. (quoting Savage v. Glendale Union High Sch., 343
F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Where, however, "the jurisdictional issue and
substantive claims are so intertwined that resolution of
the jurisdictional question is dependent on factual
issues going to the merits," Rosales v. United States,
824 F.2d 799, 803 (9th Cir. 1987), the court "must

'assume [ ] the truth of the allegations in a complaint
. . . unless controverted by undisputed facts in the
record.'"   Warren v. Fox Fam. Worldwide, Inc., 328 F.3d
1136, 1139 (9th Cir. 2003) (quoting Roberts v.
Corrothers, 812 F.2d 1173, 1177 (9th Cir.1987)).  Under
those circumstances, the court should grant the motion
to dismiss for lack of subject matter jurisdiction "only
if the material jurisdictional facts are not in dispute
and the moving party is entitled to prevail as a matter
of law."  Rosales, 824 F.2d at 803.

   2.  Supplemental Jurisdiction

   District courts have supplemental jurisdiction over
"claims that are so related to claims in the action
within such original jurisdiction that they form part of
the same case or controversy under Article III of the
United States Constitution."  28 U.S.C. § 1367(a).  A
district court in its discretion can decline to exercise
supplemental jurisdiction if: (1) the claim raises a
novel of complex issue of state law; (2) the claim
substantially predominates over the claims over which
the district court has original jurisdiction; (3) the
district court has dismissed all claims over which it
has original jurisdiction; or (4) in exceptional
circumstances, there are other compelling reasons for
declining jurisdiction.  28 U.S.C. § 1367(c).  The
Supreme Court has described 28 U.S.C. § 1367(c) as a
codification of the principles of "economy, convenience,
fairness, and comity" that underlie the Supreme Court's

earlier jurisprudence concerning pendent jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)).

    3.  Vexatious Litigant Motion

    "Federal courts can 'regulate the activities of abusive litigants by imposing carefully tailored restrictions under . . . appropriate circumstances.'" Ringgold-Lockhart v. County of Los Angeles, 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990)).  Under 28 U.S.C. § 1651(a), district courts may enter pre-filing orders enjoining vexatious litigants.  See id. at 1061-62; Weissman v. Quail Lodge Inc., 179 F.3d 1194, 1197 (9th Cir. 1999).  However, "[o]ut of regard for the constitutional underpinnings of the right to court access, 'pre-filing orders should rarely be filed.'" Ringgold-Lockhart, 761 F.3d at 1062 (quoting De Long, 912 F.2d at 1147).

    The Ninth Circuit requires a district court to comply with the following procedural and substantive requirements before imposing such an order: "(1) give litigants notice and 'an opportunity to oppose the order before it [is] entered'; (2) compile an adequate record for appellate review, including 'a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed'; (3) make substantive findings of frivolousness or

harassment; and (4) tailor the order narrowly so as 'to closely fit the specific vice encountered.'"  Id. (quoting De Long, 912 F.2d at 1147-48).

In evaluating the third and fourth factors, the Ninth Circuit has held that the following five considerations "provide[] a helpful framework": "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."  Id. (quoting Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1058 (9th Cir. 2007) (per curiam)).

Local Rule 83-8.3 states that an order declaring a party a vexatious litigant "shall be based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken."

**B.  Discussion**

1.  Defendant's Evidentiary Objections

Defendant objects to the Declaration of Janis Kent [22-5] and the Report of Janis Kent [22-6] on the grounds that they lack foundation, see Fed. R. Evid.

602, and are based on insufficient facts or data, see
Fed. R. Evid. 702(b).  See generally Evidentiary Objs.,
ECF No. 24.  Because the Court does not rely on the
objected-to evidence in reaching its conclusions in this
Order, the Court **OVERRULES as moot** Defendant's
evidentiary objections.

    2.  Motion to Dismiss

        a.  *ADA Claim*

    Defendant moves to dismiss Plaintiff's ADA claim
for lack of standing on the grounds that: (1) the
barriers identified in the Complaint do not presently
exist; and (2) the threat of repeated injury lacks
factual credibility.  Mot. to Dismiss Compl. and Declare
Pl. a Vexatious Litigant ("Mot.") 6:11-8:26, 18:7-19:16,
20:5-14, ECF No. 19.

    "The 'irreducible constitutional minimum of
standing' includes three elements: (1) injury in fact;
(2) causation; and (3) redressability." Oliver v.
Ralphs Grocery Co., 654 F.3d 903, 907 (9th Cir. 2011)
(citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61
(1992)).  To establish standing to seek injunctive
relief, a plaintiff must also demonstrate a "real and
immediate threat of repeated injury" in the future.
Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946
(9th Cir. 2011) (citing Fortyune v. Am. Multi-Cinema,
Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)).  Thus,
"[b]ecause a private plaintiff can sue only for
injunctive relief (i.e., for removal of the barrier)

under the ADA, a defendant's voluntary removal of
alleged barriers prior to trial can have the effect of
mooting a plaintiff's ADA claim." Oliver, 654 F.3d at
905 (internal citation omitted).

Defendant first argues that Plaintiff's request for
injunctive relief is moot, asserting that "[w]hile
[D]efendant would dispute whether the alleged original
'injury' ever occurred at all and whether the relevant
space was even in violation to begin with, . . . the
barriers sued upon in [P]laintiff's allegations are, at
a minimum, not existing in the present."  Mot. 8:18-26.
In support of its argument, Defendant provides a
declaration from Defendant's counsel, photographs of a
van parking space and signage, and a declaration from
Defendant's managing partner purporting to demonstrate
that the van-accessible parking space at the site does
not have the alleged barriers.  Id. at 8:10-17; see
Bryan Decl. Exs. B-F, N, ECF No. 20.

Here, the question of subject matter jurisdiction
is intertwined with the substantive issues because
Defendant's argument regarding subject matter
jurisdiction hinges on whether its parking facilities
are ADA-compliant, which goes to the heart of
Plaintiff's ADA claim.  See Safe Air for Everyone, 373
F.3d at 1039 ("[J]urisdiction and the merits of an
action are intertwined where 'a statute provides the
basis for both the subject matter jurisdiction of the
federal court and the plaintiff's substantive claim for

relief.'" (quoting <u>Sun Valley Gasoline, Inc. v. Ernst</u>
<u>Enters., Inc.</u>, 711 F.2d 138, 139 (9th Cir. 1983))).
Because the jurisdictional inquiry is coextensive with
the merits of Plaintiff's ADA claim, dismissal for lack
of subject matter jurisdiction is proper only if the
allegations in the Complaint are controverted by
undisputed facts showing that Defendant is entitled to
prevail as a matter of law.  See <u>Vera v. Bureau of</u>
<u>Indian Affs.</u>, 738 F. App'x 431, 432 (9th Cir. 2018)
(stating that under such circumstances, "challenges to
the presence of jurisdictional facts must be treated as
motions for summary judgment with the corresponding
protections for the nonmoving party." (citing <u>Safe Air</u>
<u>for Everyone</u>, 373 F.3d at 1039)).

As an initial matter, the parties dispute the
location of the alleged barriers.  According to
Defendant, Plaintiff's counsel communicated to
Defendant's counsel that the source of the injury was
the lack of compliant van-accessible parking and at no
point corrected Defendant's understanding of the facts.
Mot. 7:23-8:1; Reply 12:21-13:18, ECF No. 23; <u>see</u> Bryan
Decl. ¶ 10, Ex. A.  Plaintiff, for his part, contends
that the violations he encountered actually exist on the
eastern portion of the parking lot, in front of the
Business, whereas the van-accessible parking space
referred to in Defendant's Motion is located on the
western side away from store entrances.  Pl.'s Opp'n to
Mot. to Dismiss ("Opp'n") 2:15-26, ECF No. 22; <u>see</u>

1   Bouyer Decl. ¶ 8, Ex. 2, ECF No. 22-8.

2       Although Defendant has taken steps to assure its

3   parking facilities are ADA-compliant, see Bryan Decl. ¶

4   12, Exs. B-F, the Court cannot conclude that the

5   barriers identified in the Complaint do not presently

6   exist.  Plaintiff's ADA claim is based in part on the

7   steepness of the curb ramp.  With respect to the van-

8   accessible parking in the western lot, the declaration

9   from Defendant's counsel provides only a conclusory

10  statement that "there is no curb ramp in excess of the

11  maximum grade allowed by the ADAAG specifications,"

12  Bryan Decl. ¶ 12(b), and Defendant's photographs provide

13  no specific measurements or details sufficient to

14  confirm ADA compliance, see Byran Decl. Exs. B-F.  On

15  this basis, Defendant has not met the "heavy burden" of

16  establishing that Plaintiff's request for injunctive

17  relief is moot.  See Rosemere Neighborhood Ass'n v. U.S.

18  Env't Prot. Agency, 581 F.3d 1169, 1173 (9th Cir. 2009)

19  ("The party alleging mootness bears a 'heavy burden' in

20  seeking dismissal." (quoting Friends of the Earth, Inc.

21  v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189

22  (2000))).

23      With respect to the eastern parking lot in front of

24  the Business, Defendant argues in its Reply that the

25  barriers do not exist there because it complies with the

26  1991 ADA Standards.  See Reply 13:27-15:20.  In support,

27  Defendant submits a declaration from Defendant's

28  managing partner, Alvin T. Dickens, III, stating that

the parking lot was completed in 1988, the parking facilities predate the ADA of 1991, and it is his understanding that the parking lot was in compliance with the 1991 ADA Standards.  See Dickens Reply Decl. ¶¶ 5-6, ECF No. 23-1.  This is insufficient, however, to establish that the 2010 ADA Standards are wholly inapplicable.

As Defendant himself points out, the Safe Harbor provision of the 2010 ADA Standards states that "[e]lements that have not been altered in existing facilities on or after March 15, 2012 and that comply with the corresponding technical and scoping specifications for those elements in either the 1991 Standards . . . are not required to be modified in order to comply with the requirements set forth in the 2010 Standards."  28 C.F.R. § 35.150(b)(2)(i).  Without knowing if any alterations have been made, the Court cannot conclude at this juncture that the 1991 ADA Standards apply.  The Court declines to assess whether the alleged barriers exist under the 1991 ADA Standards, particularly where Defendant first argues for the applicability of the 1991 ADA Standards in its Reply despite having notice since the filing of the Complaint that Plaintiff is alleging violations under the 2010 ADA Standards.  See Compl. ¶ 11.

In short, there are disputes over material facts inappropriate for resolution on a Rule 12(b)(1) motion. See Safe Air for Everyone, 373 F.3d at 1039

("[J]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." (quoting Sun Valley, 711 F.2d at 139)).  At this time, the Court cannot conclude that the alleged barriers do not exist and that the ADA claim is moot.

Finally, Defendant argues that Plaintiff lacks standing to seek injunctive relief under the ADA on the independent basis that the threat of repeated injury lacks factual credibility.  Mot. 18:7-19:16.  Defendant contends that Plaintiff's allegations regarding intent to return are insincere, pointing to Plaintiff's extensive ADA litigation history and the absence of facts indicating past patronage, close proximity to Plaintiff's home, or a need to inquire about phones. Id.

"[A]n ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." Chapman, 631 F.3d at 944.  "Where 'the public accommodation being sued is far from the plaintiff's home,' a plaintiff shows 'actual or imminent injury sufficient to establish standing' when he or she 'demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit

the accommodation if it were made accessible.'" <u>Feezor</u>
<u>v. Sears, Roebuck & Co.</u>, 608 F. App'x 476, 477 (9th Cir.
2015) (quoting <u>D'Lil v. Best W. Encina Lodge & Suites</u>,
538 F.3d 1031, 1037 (9th Cir.2008)).  However, "'some
day' intentions—without any description of concrete
plans, or indeed even any specification of when the some
day will be—do not support a finding" of actual or
imminent injury.  <u>Lujan</u>, 504 U.S. at 564.

     Plaintiff alleges that he uses a wheelchair for
mobility, he visited the Business, he personally
encountered barriers related to his disability—
inaccessible parking, and he is being deterred from
patronizing the Business but intends to return "for the
dual purpose of availing himself of the goods and
services offered to the public and to ensure that the
Business ceases evading its responsibilities under
federal and state law."  Compl. ¶¶ 1, 8, 11-12, 16-17,
19.  Plaintiff further alleges that "[u]pon being
informed that the [Business] has become fully and
equally accessible, he will return within 45 days as a
'tester' for the purpose of confirming . . .
accessibility."  <u>Id.</u> ¶ 20.  Plaintiff thus articulates a
"concrete plan[]" to return, not just "'some day'
intentions."  <u>Lujan</u>, 504 U.S. at 564.  At the motion to
dismiss stage, Plaintiff's allegations are sufficient to
establish standing.

     The Court rejects Defendant's argument that
Plaintiff's allegations are implausible because of his

past ADA litigation.  See <u>Antoninetti v. Chipotle</u>
<u>Mexican Grill, Inc.</u>, 643 F.3d 1165, 1175 (9th Cir. 2010)
("Courts must tread carefully before construing a
Disability Act plaintiff's history of litigation against
him."); <u>D'Lil</u>, 538 F.3d at 1040 ("The attempted use of
past litigation to prevent a litigant from pursuing a
valid claim in federal court warrants our most careful
scrutiny.").  The Ninth Circuit has held that an ADA
plaintiff can claim "tester standing," which allows a
plaintiff whose "only motivation for visiting a facility
is to test it for ADA compliance" to assert standing.
<u>C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.</u>, 867 F.3d
1093, 1096 (9th Cir. 2017).  Even if Plaintiff's only
motivation for visiting the Business was to test it for
ADA compliance, "motivation is irrelevant to the
question of standing under Title III of the ADA."  <u>Id.</u>
at 1102.  Because Plaintiff has sufficiently established
standing at this stage, Defendant's Motion to Dismiss
the ADA claim is **DENIED.**

      b.  *Unruh Act Claim*

    Defendant argues that the Court should decline to
exercise supplemental jurisdiction over, and therefore
dismiss, the Unruh Act claim on any of three independent
grounds under 28 U.S.C. § 1367(c)(2)-(4).  Mot. 1:13-18,
2:23-6:9.  The Court agrees with Defendant that
"exceptional circumstances" exist and declines to
exercise supplemental jurisdiction over Plaintiff's
Unruh Act claim.  See 28 U.S.C. § 1367(c)(4).

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act."  Velez v. Il Fornaio (Am.) Corp., No. 3:18-CV-1840-CAB-MDD, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018).  These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard."  Cal. Civ. Code § 55.52(a)(1). When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency litigants."[1]  In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> [M]ore than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms.  Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs

---

[1] A high-frequency litigant is defined as a plaintiff who has filed ten or more complaints alleging a construction-related accessibility violation within the twelve-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.  Cal. Civ. Proc. Code § 425.55(b)(1).

have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year.  Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation.  This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations . . . .

Cal. Civ. Proc. Code § 425.55(a)(2).  In response to the "special and unique circumstances" surrounding disability access litigation, id. § 425.55(3), California imposed a "high-frequency litigant fee," requiring high-frequency litigants[2] to pay a $1,000 filing fee in addition to the normal fee at the time of filing a complaint.  Cal. Gov't Code § 70616.5.

In enacting restrictions and additional fees for the filing of construction-related accessibility claims, California sought to limit the burden these types of cases put on its businesses.  But, in filing these actions in federal courts, plaintiffs have managed to avail themselves of the state statutory damages while circumventing the limitations imposed by the state legislature.  This situation, as well as the increased burden on federal courts due to the increasing number of these cases, presents the type of "exceptional

---

[2] Plaintiff qualifies as a high-frequency litigant.  See Decl. of Anthony Bouyer in Supp. of Resp. to OSC re Suppl. Jurisdiction ¶ 2, ECF No. 10-2 ("I have filed more than 10 complaints alleging construction-related accessibility violations within the 12-month period immediately preceding the filing of the complaint in this action.").

circumstances" and "compelling reasons" that justify a court's decision to decline to exercise supplemental jurisdiction over any Unruh Act or other state law claims under 28 U.S.C. § 1367(c)(4).

Declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim under these circumstances furthers the values of judicial economy, fairness, convenience, and comity. See, e.g., Schutza v. Cuddeback, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Allowing federal courts to act as a haven for these claims is an affront to the comity between federal and state courts. California's elected representatives, not this Court, have enacted laws restricting construction-related accessibility claims and, in doing so, have directed that these claims by high-frequency litigants be treated differently than other matters.

Accordingly, the Court concludes that "exceptional circumstances" and "compelling reasons" exist to support the Court's decision to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. A significant number of judges both within the Central District of California and elsewhere have similarly declined to exercise supplemental jurisdiction over construction-related accessibility claims asserted under state law. See, e.g., Whitaker v. 7707 Sunset, Inc., No. CV 20-1149-DMG(AGRx), 2020 WL 5823566 (C.D. Cal. May 26, 2020) (Gee, J.); Garcia v. Thomas, No. 2:20-cv-

1   00684-VAP-PLAx, 2020 WL 5239175, (C.D. Cal. May 7, 2020)

2   (Phillips, J.); <u>Fernandez v. McAuley</u>, No. CV 20-1279 MWF

3   (GJSx), 2020 WL 3655492 (C.D. Cal. Mar. 30, 2020)

4   (Fitzgerald, J.); <u>Garcia v. Ross Stores, Inc.</u>, No. CV

5   20-00950 PA (GJSx), 2020 WL 5239863 (C.D. Cal. Feb. 12,

6   2020) (Anderson, J.); <u>Langer v. Easton</u>, No. CV 19-8562

7   PSG (ADSx), 2019 WL 7900274 (C.D. Cal. Nov. 7, 2019)

8   (Gutierrez, J.); <u>Zarian v. Triple M Props.</u>, No. 8:19-cv-

9   01951-JLS-DFM, 2019 WL 5538927 (C.D. Cal. Oct. 25, 2019)

10  (Staton, J.); <u>Whitaker v. ALO, LLC</u>, No. CV 19-03312-RGK-

11  GJS, 2019 WL 787737 (C.D. Cal. Oct. 4, 2019) (Klausner,

12  J.); <u>see also</u> <u>Langer v. Petras</u>, No. 19-cv-1408-CAB-BGS,

13  2019 WL 3459107 (S.D. Cal. July 31, 2019) (Bencivengo,

14  J.); <u>Velez v. Cloghan Concepts, LLC</u>, 387 F. Supp. 3d

15  1072, 1077-78 (S.D. Cal. June 10, 2019) (Moskowitz, J.);

16  <u>Reyes v. Flourshings Plus, Inc.</u>, No. 19cv261 JM (WVG),

17  2019 WL 1958284 (S.D. Cal. May 2, 2019) (Miller, J.);

18  <u>Schutza v. Alessio Leasing, Inc.</u>, No. 18cv2154-LAB(AGS),

19  2019 WL 1546950 (S.D. Cal. Apr. 8, 2019) (Burns, J.);

20  <u>Rutherford v. Ara Lebanese Grill</u>, No. 18-CV-01497-AJB-

21  WVG, 2019 WL 1057919 (S.D. Cal. Mar. 6, 2019)

22  (Battaglia, J.); <u>Schutza v. Lamden</u>, No. 2:17-cv-2562-L-

23  JLB, 2018 WL 4385377 (S.D. Cal. Sept. 14, 2018) (Lorenz,

24  J.); <u>Reyes v. Snoozetown, LLC</u>, No. 3:18-cv-00498-H-JLB,

25  2018 WL 3438753 (S.D. Cal. July 16, 2018) (Huff, J.).

26      The Court has not deprived Plaintiff of any

27  remedies, as the ADA claim remains pending before this

28  Court, and Plaintiff may pursue his Unruh Act claim in

state court.[3]  Any resultant inefficiencies "are slight in comparison to California's weighty interest in ensuring its laws are not circumvented, and in enforcing the detailed statutory regime it has set up for construction-related accessibility claims."  Davidson v. Cole, No. SACV-20-01733-CJC-(ADSx), 2020 WL 6588386, at *4 (C.D. Cal. Sept. 28, 2020).  The Court therefore **GRANTS** Defendant's Motion to Dismiss the Unruh Act claim.

   3.   Motion to Declare Plaintiff a Vexatious
        Litigant

   Lastly, Defendant asks the Court to declare Plaintiff a vexatious litigant under Local Rule 83-8 and direct the Clerk not to accept filings from Plaintiff without review by an authorizing judge.  Mot. 17:22-26. At a minimum, Defendant argues, the Court should prohibit Plaintiff from filing ADA-based state-law claims for monetary damages.  Id. at 17:27-28. Defendant contends that Plaintiff's "history and motive demonstrate that he is a vexatious litigant," pointing out that Plaintiff has filed at least 411 lawsuits in this district in 2020 and urging the Court to consider Plaintiff's motive "to extort quick cash settlements

---

[3] Plaintiff encountered the barriers in May 2020.  Compl. ¶ 8.  Accordingly, the statute of limitations for Plaintiff's Unruh Act claim has not lapsed, and Plaintiff is able to bring this claim in state court.  See Harris v. County of San Diego, No. CV 18-924-BTM-AHG, 2019 WL 6683367, at *4 (S.D. Cal. Dec. 5, 2019) (finding that Unruh Act claims "are subject to a two-year statute of limitations" (citing Cal. Civ. Proc. Code § 335.1)).

1  from businesses . . . [and] to evade California state
2  court protections against such suits." Id. at 10:2-
3  16:21.

4      It is indisputable that Plaintiff is a serial ADA
5  litigant who has filed numerous complaints alleging both
6  ADA and Unruh Act claims.  But "[a]n injunction cannot
7  issue merely upon a showing of litigiousness.  The
8  plaintiff's claims must not only be numerous, but also
9  be patently without merit." Molski v. Evergreen Dynasty
10 Corp., 500 F.3d 1047, 1059 (9th Cir. 2007) (per curiam)
11 (quoting Moy v. United States, 906 F.2d 467, 470 (9th
12 Cir. 1990)).  Besides emphasizing the sheer volume of
13 complaints filed by Plaintiff and their apparent
14 boilerplate nature, Defendant has not provided
15 sufficient evidence that Plaintiff's filings are
16 frivolous or without merit.  Defendant highlights six
17 other lawsuits that Plaintiff initiated on May 18 and
18 19, 2020, but all six lawsuits have resulted in either
19 an agreement to bring premises into compliance with
20 disability access laws or an injunction for compliance.
21 Opp'n 15:13-16; Bouyer Decl. ¶¶ 10-19.  Contrary to
22 Defendant's suggestion, Mot. 15:21-25, a high settlement
23 rate is not "evidence of a lack of belief in the merits
24 . . . [but rather] a fact of modern litigation." Wilson
25 v. Pier 1 Imps. (US), Inc., 411 F. Supp. 2d 1196, 1201
26 (E.D. Cal. 2006).

27     Defendant also takes issue with the fact that
28 Plaintiff always alleges a "dual purpose" for visiting a

business—to complete some task associated with the business and to examine it for ADA violations—but the "the textual and factual similarity of a plaintiff's complaints, standing alone, is not a basis for finding a party to be a vexatious litigant." <u>Molski</u>, 500 F.3d at 1061.  Further, as discussed above, the Ninth Circuit has not only cautioned against making credibility determinations based on a plaintiff's ADA litigation history but also recognized "tester standing" as entirely permissible.  <u>C.R. Educ. & Enf't Ctr.</u>, 867 F.3d at 1096; <u>D'Lil</u>, 538 F.3d at 1040.

At this juncture, there is insufficient evidence for the Court to "make substantive findings of frivolousness or harassment." <u>Ringgold-Lockhart</u>, 761 F.3d at 1062.  And "[i]n light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort." <u>Id.</u> Accordingly, the Court **DENIES** Defendant's Motion to Declare Plaintiff a Vexatious Litigant.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** the Motion as follows:

(1)  Defendant's Motion to Dismiss the ADA claim is **DENIED.**

(2)  Defendant's Motion to Dismiss the Unruh Act claim is **GRANTED.**  The Court **DECLINES** to exercise supplemental jurisdiction over the Unruh Act claim. Plaintiff's Unruh Act claim is **DISMISSED.**

(3) Defendant's Motion to Declare Plaintiff a Vexatious
    Litigant is **DENIED.**

**IT IS SO ORDERED.**


DATED: March 25, 2021          /s/ Ronald S.W. Lew
                         **HONORABLE RONALD S.W. LEW**
                         Senior U.S. District Judge